## GEORGE H. NOURSE v. THE STATE.

1. RECEIVING OR CONCEALING STOLEN PROPERTY.—The receiving of stolen property, knowing it to have been stolen, is one grade, and the concealment of such property with like knowledge is another grade, of the offense defined by Article 745 *a* of the Penal Code.

2. SAME—INDICTMENT.—It is not necessary that an indictment should allege that the stolen property was received or concealed by the accused "without the consent of the owner, or to defraud the owner, or to appropriate it to the defendant's own use and benefit." The offense may be complete without either of these elements.

3. EVIDENCE—CORROBORATION OF AN ACCOMPLICE.—To support a conviction on testimony of an accomplice, there must be other evidence tending to connect the accused with the commission of the crime; but it is not necessary that such other evidence shall conclusively inculpate the accused. If it *tends* to connect him with the commission of the offense, the requirement of the statute is complied with.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. G. COOK.

The charging part of the indictment was as follows:

"That George H. Nourse, late of the county aforesaid, on the twentieth day of the month of February, in the year of our Lord one thousand eight hundred and seventy-seven, in the said county of Galveston, in the state of Texas, with force and arms, then and there four bales of cotton, each of the value of fifty dollars, of the corporeal personal property of Julius Runge, Julius Kauffman, and Charles F. Hohorst, copartners, then and there doing business under the firm-name of Kauffman & Runge, recently before then feloniously and fraudulently stolen, taken, and carried away from and out of the possession of said Kauffman & Runge by Thomas Logan and Lucien Debazier, then and there without the consent of said Kauffman & Runge, with the intent then and there of depriving the owners of the value of the same, and then and there appropriating the same to the use and benefit of them, said Thomas Logan and Lucien Debazier, feloniously and fraudulently did then and there receive and conceal— he, the said George H. Nourse, then and there well knowing that said four bales of cotton had been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, and well knowing the same to have been acquired by theft, contrary," etc.

The opinion states the material facts. The jury assessed two years in the penitentiary against the accused.

*Languille & Catlin*, for the appellant. We first call the

attention of this honorable court to the motion in arrest of judgment, which was overruled by his honor, the judge presiding in the court below.

The ground upon which it is predicated is that the bill of indictment nowhere alleges that George H. Nourse received or concealed the cotton therein described, without the consent of the owners thereof, with the fraudulent intent to deprive said owners of the value of the same, and to appropriate it to his (said Nourse's) own use and benefit.

If we are correct, that a bill of indictment drawn under Article 2382, Paschal's Digest, must contain these allegations, it follows that the point is properly saved upon motion in arrest of judgment. Pasc. Dig., Art. 3153.

The question is presented in this record by bill of exception, and, as far as we have been able to discover, it is a new one in the annals of Texas jurisprudence. Its decision involves the construction of Article 2382, Paschal's Digest, which reads as follows :

"If any person shall receive or conceal property which has been acquired by another in such manner that the acquisition comes within the meaning of the term theft, knowing the same to have been so acquired, he shall be punished in the same manner as by law the person stealing the same would be liable to be punished."

Notice, if your honors please, that not one word in this statute expressly requires at the hands of a defendant a fraudulent intent in order to brand him as a felon before his fellow-man. It describes and provides for the punishment of a crime known to the law as a felony, and yet, under its letter, the accused need not have a felonious—nay, even a fraudulent—intent! How shall this statute be construed?

Is it to receive a narrow and literal interpretation? Is the spirit of the law to be ignored and thrust aside? Are the purposes for which the law has been enacted not to be considered?

If such should be the views of this honorable court, our lips are sealed, and we can simply say that the motion in arrest of judgment has been properly overruled.

Before entering into the discussion of the merits or demerits of the motion, permit us to digress a few moments.

The office of an indictment is to indicate the offense charged against the accused.　1 Bouv. L. Dic.

One of its requisites is that, besides other matter, it shall set forth the offense in plain and intelligible words.　Pasc. Dig., Art. 2863.

A little more than this, we think, is required of the pleader.

Chief Justice DeGray, in *Rex* v. *Home*, 2 Cow. 682, lucidly states what an indictment should allege: "The charge must contain such a description of the crime as that the defendant may know for what crime he is called upon to answer; that the jury may appear warranted in their conclusion of guilty or not guilty upon the premises delivered to them, and that the court may see such a definite crime that they may apply the punishment which the law prescribes."

He goes further, and says: "As to the matter to be charged, whatever circumstances are necessary to the crime imputed must be set out."

The view taken by the learned jurist from whom we have just quoted has been approved in the legislative halls of Texas.

Paschal's Digest, Article 2868, provides that "it is not necessary to state in an indictment anything which it is not necessary to prove."

This authoritative enunciation involves another proposition, the correctness of which cannot be gainsaid, and it is this: "*The indictment shall allege all the material facts which the state must prove.*"

Let the state's counsels throughout this land know by

your decision in this cause that before they can, as the representatives of the people before the courts, deprive a citizen, however humble, of his liberty, his name, and all that is dear to man, upon such an accusation as the one at bar, they shall be required to allege and prove:

1st. That a theft of personal property of value has been. committed by another person than the receiver.

2d. That the defendant has received or concealed the property described in the indictment.

3d. That the accused knew, at the time of such receiving or concealing, that said property was acquired by theft.

4th. That such receiving or concealing took place without the consent of the owner of the property, or of his authorized agents.

5th. That the purpose of such receiving or concealing was to defraud the owner of the value of the property.

6th. And, finally, that the defendant intended to appropriate to himself the property, or a part thereof.

These are the six constituent parts involved, as we think,. in the crime of receiving stolen property.

It follows that, if we are correct in the position just taken, then the indictment under present consideration is fatally defective, because it wholly fails to allege any fact showing the existence of the 4th, 5th, or 6th ingredients which constitute the crime sought to be charged.

Does the attorney general concede that, before a prisoner can be legally convicted of the crime charged in this cause,. it must be affirmatively proven by the state that the property was received or concealed by the defendant, without the consent of the owner?

If he admits this, it follows that, because the want of consent is at issue, and must be proven, therefore it must be alleged in the indictment.

We respectfully submit that the indictment should have alleged and charged appellant with the fraudulent intent to

deprive the owners of the value of the cotton, and to appropriate it to his own use and benefit.

Is not this a correct position? Shall it be said that in Texas, or elsewhere, one who, with the intent to return it to the owner, receives property which he knows has been stolen by another is a felon?

Certainly the state's counsel shall not be heard to assume the affirmative of this proposition. But, says he, a man may receive property which he knows was acquired by theft with the single purpose and intent of aiding the thief, and be guilty under the law.

To this we accede, because the receiver, in aiding and abetting the thief, partakes, as it were, of his fraudulent intent to deprive the owner of his property, and to appropriate it to his own use.

Let us examine for a few moments those statutes enacted to suppress and punish crimes belonging to the family of theft.

We first come to theft from the person: "If any person shall commit theft by privately stealing from the person of another, he shall be punished by confinement in the penitentiary not less than two nor more than seven years." Pasc. Dig., Art. 2406.

It is readily seen that the above statute, like Article 2382, does not require the want of consent on the part of the owner; nor is it requisite, under its letter, that the thief shall be actuated by a fraudulent intent to deprive the owner of the value of the property, and to appropriate it to his (the thief's) use and benefit.

We find next the statute of theft from a house. It reads as follows: "If any person shall steal property from a house, in such manner as that the offense does not come within the definition of burglary, he shall be punished by confinement in the penitentiary not less than two nor more than seven years." Pasc. Dig., Art. 2408.

In *Gadson* v. *The State*, 36 Texas, 351, Justice Ogden, delivering the opinion of the court, held an indictment for theft from a house insufficient because it failed to allege from whose possession the property was stolen.

And, again, the statute punishing theft of animals (Pasc. Dig., Art. 2409) is silent on the subject of consent, and of fraudulent intent; why, then, is it that every indictment for theft from the person, or from a house, contains the allegations which we insist ought to be in the bill under consideration?

In *Harrell* v. *The State*, 5 Humph. 68, it was held that an indictment for receiving stolen goods, etc., must allege that the property was received with the intent to deprive the true owner thereof.

To test this indictment we are compelled to look at Article 2381, Paschal's Digest, and see whether it comports with the definition therein laid down.

In *Garcia* v. *The State*, 26 Texas, 211, the indictment having been drawn under Article 2409, Paschal's Digest, Justice Moore uses language appropriate to the cause at bar. We quote:

"Article 765 of the Penal Code makes the stealing of one of the domestic animals enumerated in it a distinct offense from theft in general, as defined by the previous articles. But in this Article of the Code there is no definition of the offense inhibited by it, and to ascertain this we have to look to the definition of theft as given in the preceding articles, and there we find that the allegation of the possession from which the stolen property was taken is made by the definition of the offense a necessary ingredient in its description."

The crime imputed to this appellant, like swindling, embezzlement, theft from the person, theft from a house, and theft of animals, belongs to the evil family of theft in general.

It is punished as theft, and we believe that the rules of

pleadings by which an indictment for theft is tested shall govern the case at bar.

We are certainly right in the positions taken, and, in closing this part of our argument, permit us to ask that your honors, in deciding these questions, bear in mind Article 2866, Paschal's Digest, which reads as follows:

"Where a particular intent is a material fact in the description of the offense, it must be stated in the indictment. But in any case where an intent to defraud is required to constitute an offense, it shall be sufficient to allege an intent to defraud, without naming therein the particular person intended to be defrauded."

We now proceed to consider the charge of the court.

We claim that the judge erred in authorizing the jury to find the defendant guilty of two crimes, or of either one of them.

That portion of the charge of the court which we think is objectionable reads as follows: "If you believe from the evidence that the property alleged, or part of it, of value twenty dollars or more, belonged to Kauffman & Runge, and was in their possession; that, without their consent, or the consent of either or any of the firm, or any one authorized to consent to the taking, Logan and Debazier fraudulently took the same into their own possession, with intent to deprive the owner of the value of the same, and appropriate it to their own use, and that the defendant, knowing that the property had been acquired by theft, with a fraudulent intent received or concealed it, you will by your verdict say that you find defendant guilty of *receiving, or concealing*, as you may find the fact to be," etc.

We respectfully submit that Article 2382 does not describe two offenses; for, if it does, the district attorney should have been made to select under which he would try the defendant

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J.    This was a prosecution against the defendant for receiving and concealing four bales of cotton, knowing the same to have been stolen, under Article 745 *a* of the Criminal Code of this state, which reads as follows : " If any person shall receive or conceal property which has been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, knowing the same to have been so acquired, he shall be punished in the same manner as by law the person stealing the same would be punished."

Theft is defined in the preceding Article of the Code as follows : " Theft is the fraudulent taking of corporeal personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

The 1st error assigned by the defendant is " that the court erred in its general charge to the jury in assuming that defendant had received or concealed cotton, the same being a charge upon the weight of evidence." Take the entire sentence in which the words objected to are used, and we do not believe they were calculated to mislead the jury, or that they did prejudice the rights of the defendant. The charge was not excepted to by the defendant.

The 2d assignment of errors is " that the court erred or misled the jury in its general charge by authorizing them to find defendant guilty of receiving stolen property, or of concealing stolen property." This assignment is not well taken. Under the indictment, if the evidence was sufficient, the jury were authorized to find the defendant

·guilty of fraudulently receiving stolen property, or of concealing it, knowing the same to have been stolen. They are both grades of the same offense. It is the duty of the judge, in such cases, to distinctly instruct the jury as to the law which is applicable to the evidence, in defining the several grades of the offense embraced in the same indictment, and of the jury to find of which particular grade, if any, the defendant is guilty.

In the 3d assignment of errors the defendant insists that " the court erred in refusing to give the instructions asked by the defendant." We think that the court in its general charge to the jury had distinctly and concisely set forth the law applicable to the case, and that it properly refused to give the special instructions asked by the defendant. The jury found the defendant guilty, and assessed his punishment at two years' confinement in the penitentiary.

The attention of this court is specially called to the motion in arrest of judgment; and upon the action of the judge who presided at the trial, in overruling this motion, the counsel for the accused have made a very ingenious brief. The ground upon which the motion in arrest of judgment is predicated is that the bill of indictment nowhere alleges that George H. Nourse received, or concealed, the cotton therein described, without the consent of the owners thereof, with the fraudulent intent to deprive said owners of the value of the same, or to appropriate it to his (said Nourse's) own use and benefit.

We do not believe that an indictment drawn under said Article 745 *a* of the Criminal Code must contain these allegations to make it a good indictment. The statute which we have quoted makes no such requisition. The indictment does not follow the usual precedents for this offense given by Mr. Wharton, or Mr. Archbold. It, however, fully sets out and describes the acts constituting the theft, gives all the constituents of the crime, and states that the property

so stolen " was then and there feloniously and fraudulently received and concealed " by the defendant, " he, the said George H. Nourse, then and there well knowing that said four bales of cotton had been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, and well knowing the same to have been acquired by theft," etc. The indictment states the offense so plainly that a man of ordinary capacity would readily understand the crime charged.

In some of the American states the statute, in defining the offense of receiving stolen goods, makes it one of the constituents of the crime that the property should be received, not only with a guilty knowledge of the fact that it was stolen, but also with the *intent to defraud the owner;* and in all the reported cases we have found, in which it has been held necessary to charge in an indictment for receiving stolen goods that they were received with an intent to defraud the true owner, the decisions were made under statutes which rendered this necessary.

Our statute, and those of most of the states of the Union, are different. In an indictment for receiving stolen goods, knowing them to have been stolen, under our existing statute it is not necessary to charge the defendant with having received the goods with the intent to defraud any person. See the decision in the case of *Gandolpho* v. *The State*, 33 Ind. 439, which is a case exactly in point, and made under a statute similar to ours as to this offense. If the receiver of stolen property received it for the purpose of aiding the thief, or for concealing it, without expecting to receive any reward thereby, he is equally guilty as if he had bought it from the thief, with a knowledge that it was stolen with the intent to defraud the owner.

The 1st point to be proved on a trial under an indictment for receiving stolen goods is that the goods were stolen; 2d, a guilty knowledge on the part of the re-

ceiver that they were stolen. This knowledge is to be collected from all the various circumstances of the case. The usual evidence is that the goods were bought for a nominal sum, under suspicious circumstances. Proof that he concealed the goods is presumptive evidence of the same effect. Roscoe's Cr. Ev. 822.

Under the common law it was not necessary to charge in an indictment for theft that the property was taken without the consent of the owner, for the charge that it was feloniously taken included the idea that it was taken without the consent of the owner. The statutes of 7 & 8 George 4, c. 29, made the offense of receiving stolen goods to consist of receiving the goods knowing them to have been stolen, and Tindall, C. J., so held in *Rex* v. *Jervis*, C. C. & P. 156. (2 Russ. on Cr. 243, 246.)

There is no reason why an indictment against the receiver of stolen goods should charge that the property was received by the accused with the intent to defraud the owner. When the receiver knows that the goods have been stolen by the thief, then, if after the offense of theft is complete, he receives or conceals the stolen property, to aid the thief in escaping detection, or to assist him in disposing of it, the offense is complete. As has been so well said by the assistant attorney general, in his brief, such a receiver of stolen property is to be punished, not for depriving the owner of the value of his goods, nor for unlawfully appropriating the goods to his own use without the consent of the true owner thereof, but because he receives and conceals them, knowing them to be acquired by theft. "The intention," says Mr. Roscoe (822), "is not material, provided he knew them to be stolen. He is punished, as it were, for assisting the thief after the commission of the offense of theft, for aiding after the fact, and thereby making it profitable to steal." The receiver of stolen goods was anciently guilty of only a misprision, or compounding a felony. Afterwards, under an old

English statute, he became accessory after the fact to the thief. Later legislation in England and the United States generally has made this offense a substantial one.

Mr. Bishop, in treating of this crime, says : "First, *as to the intent*. The question of the intent is partly answered in the proposition that the person receiving the stolen goods must know them to have been stolen. Moreover, the statutes do not require that the receiver should act from motives of personal gain ; if his object is to aid the thief, this is enough. So it is enough if his object is to get from the owner a reward for restoring the goods to him." 2 Bishop's Cr. Law, sec. 1093.

The judge who tried this case fully and fairly submitted to the jury the question of the fraudulent intent of the accused in receiving the stolen property, as should be done in all such cases. The court also gave to the jury the law governing the corroboration of the testimony of accomplices, in the exact words of the statute, which is as follows :

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed ; and the corroboration is not sufficient if it merely shows the commission of the offense." Code Cr. Proc. (Pasc. Dig., Art. 3118).

Before the adoption of our Code, the rules of evidence known to the common law of England, both in civil and criminal cases, governed in this state, and they still govern, except where they are in conflict with the provisions of our Code of Procedure, or of some other statute of this state. Under the common law the rule of evidence as to the corroboration of accomplices is somewhat peculiar. Says Mr. Roscoe : "It has been repeatedly laid down that a conviction upon the testimony of an accomplice, uncorroborated, is legal. The point was considered by the twelve judges, and so decided, in *Rex* v. *Atwood*, 1 Lea, 464, and again in

*Rex* v. *Durham*, 1 Lea, 478." Roscoe's Cr. Ev. 120, 121, and authorities cited. The evidence of an accomplice is altogether for the jury (under the common-law rules of evidence), and the jury, if they please, may act upon it without any confirmation of his statement; but it is held proper for the presiding judge to advise them not to convict if the testimony of the accomplice is uncorroborated. Under Article 3118 of our Code, the testimony of an accomplice must be corroborated to support a conviction. It has been decided both by the supreme court and the court of appeals in this state that the term "accomplice," as used in Article 3118, applies, not only to accomplices in a technical or restrained sense, but to all witnesses who are *particepes criminis*, whether as principal or accessories. *Bob Irwin* v. *The State*, 1 Texas Ct. of App. 301, and authorities therein cited.

It will be seen that, to justify a conviction on the testimony of an accomplice, there must be some evidence which, of itself and without the testimony of the accomplice, *tends* in some degree to connect the accused with the commission of the crime. The supreme court of California (in the case of *The People* v. *Melvane*, 39 Cal. 614) say: "The corroborative evidence may be slight and entitled to but little consideration; nevertheless, the requirements of the statute are fully fulfilled if there be any corroborating evidence which of itself *tends* to connect the accused with the commission of the offense." This decision was rendered under a statute very similar to ours in regard to the corroboration necessary to be had to the testimony of an accomplice to support a conviction. Article 375 of the Code of California is as follows: "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration shall not be sufficient if it merely shows the commission of the offense or

the circumstances thereof." It is a mistaken idea to suppose that the corroborating evidence must conclusively of itself connect the defendant with the commission of the offense. If so, there would be no use for the testimony of the accomplice.

This leads us to consider the evidence upon which the prisoner was convicted. Thomas Logan and Lucien Debazier were jointly indicted and charged with the theft of four bales of cotton, each of the value of $50, the property of Julius Runge, Julius Kauffman, and Charles F. Hohorst, copartners under the firm-name of Kauffman & Runge. At the same time the grand jury found the indictment against the defendant for having received the identical four bales of cotton from said Logan and Debazier, knowing the same to have been stolen. The prosecution proved that four bales of cotton, the property of said firm of Kauffman & Runge, were stolen from the Shippers' Press, in the county and city of Galveston, about February 10, 1877, as alleged in the indictment. The court, on the application of the district attorney, entered a *nolle prosequi* as to said Logan and Debazier in the case against them, and they were then placed upon the stand as witnesses for the state against the defendant, Nourse.

Lucien Debazier testified that "I know the defendant, George H. Nourse; he keeps a junk-shop and cotton-pickery in the city and county of Galveston, on the corner of Mechanic street and 28th street. I went to see defendant, and he told me that he would take all the cotton I could get. Thomas Logan and I stole the cotton out of the Shippers' Press, in the city and county of Galveston. We stole eight bales in all. Defendant gave us thirty dollars a bale for it. It was understood that the bales averaged five hundred pounds. We went to the Shippers' Press, and I got over the gate and opened it, and then Thomas Logan and I rolled the cotton out. We rolled it across to the

defendant, at his place of business, corner of Mechanic and 28th streets. We took the cotton there between the hours of one and three o'clock at night. I would go to the window and rap on it, and he would get up and open the back gate, take charge of the cotton, and strip off the bagging at once. Do not know where he put the bagging. I told him the cotton was stolen. He wanted me to tell him where from, but I would not. Thomas Logan proposed the stealing to me. I got forty dollars of the money. We would deliver the cotton at night, and get the money next day. We first commenced stealing the cotton in November, A. D. 1876. The last four bales were stolen early in February last, just before Mardi Gras day. We delivered these four bales at night, between the hours of one and three, and got pay, thirty dollars a bale, for it from defendant.  *  *  * Am just from Galveston county jail, where I have been confined for stealing four bales of cotton, for which defendant is being prosecuted for receiving and concealing, knowing the same to be stolen; knew I was stealing when I took it. I am telling the truth, and would testify to the same facts if I knew I was going to be prosecuted. Will be nineteen years old the 17th day of next month."

Thomas Logan testified to the same facts as Debazier in regard to the theft of the cotton by himself and Logan, and the receipt of it by defendant, who (the witness says) knew the cotton was stolen when he received it.; that Debazier collected the money for the cotton from defendant after it was delivered; that he, Logan, got the largest portion of the money (about $200 of it). Logan's testimony differed from Debazier's in this : that Logan denied having tempted or induced Debazier to go into the thieving speculation of stealing the cotton.

A. H. Perry testified : " Am clerk of the Shippers' Cotton Press in the city and county of Galveston. Eight bales of cotton have been missed from the Press. The four bales

mentioned in the indictment were missed about the 10th of February last. The cotton belonged to Kauffman & Runge. The four bales had the following marks and weights, viz. : [G], No. 18, 535 pounds; G D N C W, 596 pounds; C L, No. 323, 460 pounds; M A X R N S H, 542 pounds. Shortly after missing the cotton I saw the bagging at George H. Nourse's. It corresponded in the marks and weights with the four bales which were taken from the Press. Do not know who took it. (The bagging was here brought into court and identified by witness.) It is identical in marks and weights with that taken from the Press. The cotton is worth, and was at the time worth, fifty or sixty dollars a bale.''

H. Huber testified : '' Am a clerk for Kauffman & Runge. The firm had four bales of cotton stolen from the Shippers' Press, where it was stored. Marks and weights on the bagging same as that in Perry's evidence. The bagging in court I identify as the bagging on the cotton lost. It is the same as that we lost.''

James V. Riley testified : '' Am a policeman and detective. James Norton and I found the bagging now in court at the defendant's, George H. Nourse's, in his yard on the corner of Mechanic and 28th streets, in the city and county of Galveston. We made a search for the bagging. We first ripped up the flooring in a back shed of his, and there we found the bagging of two bales; we then saw some fresh dirt in one corner of the yard, and dug up the bagging of two more bales. It was buried about two and a-half or three feet in the ground. This is the bagging we found, here in court. We found it on the 19th of February, 1877.''

James Norton testified : '' I am a detective on the police force of Galveston. James V. Riley and I went to execute a search-warrant for eight bales of cotton, on the premises of defendant, corner of Mechanic and 28th streets. We

told the defendant what we wanted, and he said you shall not take this cotton until you find an owner for it." * * * " We found eight bales of cotton on his premises, and took them in charge. Neither of the bales were marked like the bagging found, and here in court. They had new bagging on them; hence we hunted for the old bagging, and found it as I have said." * * * " The eight bales of cotton found on defendant's premises were marked as follows: No. 86, No. 90, No. 95, No. 96, No. 52, No. 41, No. 39. Marked N 76."

The evidence on the part of the state shows a state of things in relation to the prisoner such as would be naturally expected to exist if the evidence of the accomplices was true, and not likely to have existed if the same was false. The defendant offered no evidence. The court properly overruled defendant's motion for a new trial, and motion in arrest of judgment.

We further believe that there is sufficient evidence in the record, independent of the testimony of the accomplices, tending to connect the defendant with the offense committed, and that the entire evidence is sufficient to support the verdict of the jury in finding that the defendant fraudulently received the cotton described in the indictment, knowing the same was stolen; and the facts established by the entire evidence are not only consistent with the hypothesis of the defendant's guilt, but do exclude every other reasonable hypothesis.

For these reasons the judgment of the lower court must be affirmed.

*Affirmed.*